UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CFN AGENCY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 12-12091-LTS |
| LIBERTY MUTUAL INS. CO., | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON CFN'S MOTION FOR RECONSIDERATION (DOC. NO. 141)

November 30, 2015

SOROKIN, J.

CFN seeks reconsideration of the Court's October 23, 2015 Order ("the Order") allowing in part Liberty's motion for summary judgment. See Doc. No. 137. For the following reasons, CFN's motion is DENIED.

First, CFN argues the Court erred in finding an "agency" relationship between CFN and the Groups, suggesting the Court "fundamentally misunderstands the affinity marketing industry." Doc. No. 141 at 6-9. But the Court did not determine that CFN acted as a traditional insurance agent for the Groups. Rather, it found that CFN's status as a Group's representative of record was a designation that arose from a specific agreement between CFN and the Group pursuant to which the Group authorized CFN to serve as its broker of record for affinity marketing purposes. This finding was supported by the language of CFN's contracts with the Groups, see, e.g., Doc. No. 115-4 (contract between CFN and Compass Group "authoriz[ing] and instruct[ing]" CFN to obtain information on the Group's behalf, subject to its approval), the

language of the 2007 Agreement between CFN and Liberty, see Doc. No. 116-1 (referring to CFN's "designation by Group to represent Group"), CFN's own expert report, see Doc. No. 123-31 (describing broker of record as a designation that is "bestowed upon a client's representative" through either a formal contract with the client or a verbal or written communication by the client), and principles of agency law, see, e.g., Restatement (Third) of Agency § 2.02 (relating to parties' ability to define scope of actual authority).

Second, CFN claims the Court erred in resolving claims as to fourteen specific Groups, essentially arguing the summary judgment record did not support removing this determination from the hands of the jury in light of CFN's showing that "industry practice" requires express termination by the client. Doc. No. 141 at 9-13. As an initial matter, the Court did not resolve any claim as to any Group based on mere dormancy or inactivity, as CFN suggests. See Doc. No. 137 at 25 (leaving for trial the issue of "at what point (if ever) inactivity might result in termination pursuant to agency principles). Furthermore, for the reasons discussed at length in the Order, the Court remains satisfied that the terms of the 2007 Agreement were unambiguous, that the term "representative of record" had a clear meaning rooted in concepts of agency, that the term "continued" has a plain meaning and is not susceptible of more than one interpretation, and that assessing when and how CFN gained or lost its representative status properly turns on agency principles. As such, CFN's evidence of "industry practice" is immaterial. See Linton v. N.Y. Life Ins. & Annuity Corp., No. 04-11362-RWZ, 2006 WL 3043224, at *1 (D. Mass. Oct. 25, 2006) ("Recourse to . . . usage of trade to interpret contract terms [is] necessary only when the contract terms are ambiguous."). These were legal determinations aimed at construing the relevant contract terms, and they were appropriately made in the context of summary judgment.

Against this backdrop, CFN has not offered a legal or factual basis for reconsidering the Order with respect to any of the fourteen Groups it identifies in its motion. As to seven of the Groups, CFN challenges the Court's finding that no evidence in the record demonstrated the existence or scope of any relationship between the Group and CFN. Doc. No. 141 at 10-12. The Court's determination as to these Groups was not based on a finding that CFN never had a valid representative relationship with them; rather, it turned on the fact that CFN offered no evidence whatsoever defining the scope of the relationships or demonstrating their continuing validity in the face of Liberty's reasonable request for proof of the ongoing nature of the relationships (or Liberty's discovery requests in this litigation for proof of such, or Liberty's properly supported summary judgment motion), and CFN's pending motion points to no such evidence that the Court overlooked.[1]

As to six other Groups, CFN concedes that the terms of its original agreements with the Groups included expiration dates that had long passed, but suggests its maintenance of websites for the Groups thereafter is evidence that the Groups elected to continue their relationships with CFN. Doc. No. 141 at 12. However, as the Court noted in the Order, in the face of explicit,

---

[1] Any representation by CFN's counsel during oral argument on the summary judgment motion (e.g., that certain Groups may have granted CFN representative status orally) does not constitute evidence that can defeat summary judgment, see Doc. No. 141 at 10-11, nor could any unsupported assertion by CFN in its pending request for reconsideration.

In addition, CFN's contention now that the Order interpreted the 2007 Agreement to "require[] CFN to prove confirmation in writing of its 'representative of record' status" is incorrect. Doc. No. 141 at 2. The Court did not construe the relevant condition precedent as imposing an obligation on CFN to produce a specific form of proof (whether a written reauthorization letter or something else) in response to Liberty's inquiries. See, e.g., Doc. No. 137 at 17-18 (noting CFN had not "identif[ied] a single shred of evidence from which a factfinder could reasonably infer" that the condition precedent was satisfied). The problem for CFN is that it has produced nothing at all to demonstrate satisfaction of the condition as to the Groups for whom claims were resolved in Liberty's favor, not that it failed to produce one particular type of proof.

3

written agreements with finite time limits and terms dictating when and how the relevant Groups could elect to extend such agreements, something more is required in order to raise a genuine issue of fact as to CFN's continued representation of the Group (i.e., something evidencing the Group's assent or understanding of the ongoing relationship, and not simply CFN's own conduct).  See Doc. No. 137 at 15 n.10.

And as to one last Group (Southwest), CFN asserts that the Court's determination rested on an improper credibility determination.  Doc. No. 141 at 13.  The Court, however, did not discredit the testimony CFN cites, in which its corporate designee testified that Southwest rescinded its termination of CFN's representative status.  Rather, the undisputed evidence showed that the relationship between CFN and Southwest originated with an express, written contract and was subsequently terminated expressly and in writing, as contemplated by the original contract.  The Court determined that, under these circumstances and as a matter of law, a vague assertion that at some unspecified time after the termination, an unidentified person affiliated with Southwest "didn't object" to CFN continuing to host a website (but that no further or more specific communication between the two entities occurred thereafter) was not sufficient to raise a triable issue of fact as to CFN's representative status.  See Doc. No. 137 at 16 & n.13.

Finally, CFN urges that the Order "upended Liberty's burden of proof on its own contract counterclaims" by imposing on CFN a burden to "prove the existence of active communications between itself and the Groups."  Doc. No. 141 at 14.  The Court did no such thing.  Rather, it determined that Liberty met its burden as the moving party of establishing facts which would entitle it to judgment as a matter of law (i.e., facts showing that it reasonably questioned CFN's continuing relationships with the relevant Groups, that there was an absence of any evidence from CFN showing the conditions precedent to payment under the 2007 Agreement continued to

be satisfied, and that CFN nonetheless had continued to accept commissions).  In the face of Liberty's undisputed evidence, even drawing all reasonable inferences in CFN's favor, CFN had to do more to defeat summary judgment than simply offer "allegations or denials," "conclusory allegations, improbable inferences, and unsupported speculation."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Sullivan v. City of Springfield</u>, 561 F.3d 7, 14 (1st Cir. 2009).  This required CFN to come forward with something from which a factfinder might reasonably infer that its relationship with each disputed Group did, in fact, continue during the relevant time period.  As to thirty-two Groups, the Court concluded that CFN failed to do so – citing neither law nor record evidence to undermine Liberty's showing – and nothing in CFN's present motion undermines that conclusion.

      Accordingly, CFN's motion is DENIED.

                                          SO ORDERED.

                                       /s/ Leo T. Sorokin
                                       Leo T. Sorokin
                                       United States District Judge